United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 25, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-40561

_____

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                  versus

JAMES DANIEL CARMICHAEL,

                              Defendant-Appellant,

_____

Consolidated with No. 02-21023

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                  versus

GABRIEL BRANDON COLLINS,

                              Defendant-Appellant.

_____

Appeals from the United States District Court
For the Southern District of Texas

_____

Before KING, Chief Judge, and HIGGINBOTHAM and STEWART, Circuit
Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

    Appellants Gabriel Collins and James Carmichael both pleaded

guilty to federal bank robbery charges and are currently serving terms of confinement in federal prison facilities. Both have appealed their sentences because, pursuant to the DNA Analysis Backlog Elimination Act of 2000 ("the DNA Act"), the sentences require the collection of a DNA sample as a mandatory condition of supervised release, a provision appellants urge is unconstitutional. They further contend that an implied provision of their sentence was the requirement, pursuant to the DNA Act, that Bureau of Prison staff take DNA samples during their incarceration, also violative of their constitutional rights. For the following reasons we dismiss the appeal for failure to exhaust administrative remedies and for unripeness.

I

In 1994, Congress authorized the Federal Bureau of Investigation to create a national index of DNA samples taken from convicted offenders, crime scenes, and unidentified human remains which could be used by criminal justice agencies for law enforcement identification, in judicial proceedings, and for criminal defense purposes.[1] As a result, the FBI established the Combined DNA Index System (CODIS), which allows state and local forensics laboratories to exchange and compare electronic DNA profiles in order to match crime scene evidence to convicted

---

[1] H.R. REP. No. 106-900, at 8 (2000), *reprinted in* 2000 U.S.C.C.A.N. 2323, 2324; Violent Crime Control and Law Enforcement Act of 1994 § 210304, 42 U.S.C. § 14132(a), (b)(3).

offenders on file in the system.[2]  By 2000, all fifty states had enacted statutes requiring convicted offenders to provide DNA samples for analysis and entry into CODIS.[3]  Samples taken from federal offenders were not included in CODIS, however, "because the language of the 1994 act only authorized the creation of the CODIS system, and not the taking of samples from persons convicted of Federal crimes."[4]

To fill the gap left by the absence of federal offenders' DNA samples in CODIS, the FBI requested in 1998 that Congress "enact statutory authority to allow the taking of DNA samples from persons committing Federal crimes of violence, robbery, and burglary, or similar crimes in the District of Columbia or while in the military, and authorizing them to be included in CODIS."[5]  In response to the perceived need for inclusion of federal offender samples in CODIS, in 2000 Congress passed the DNA Analysis Backlog Elimination Act, which granted authority for collection of these samples and also provided for federal grants to the states to assist in reducing the backlog of biological samples waiting to be analyzed in the state systems.[6]

---

[2] H.R. REP. No. 106-900, at 8 (2000), *reprinted in* 2000 U.S.C.C.A.N. 2323, 2324.

[3] *Id.*

[4] *Id.*

[5] *Id.* at 9, *reprinted in* 2000 U.S.C.C.A.N. 2323, 2324-25.

[6] *Id.*

Two provisions of the Act relating to collection of federal offenders' DNA are at issue in this appeal. The first provides that "[t]he Director of the Bureau of Prisons shall collect a DNA sample from each individual in the custody of the Bureau of Prisons [BOP] who is, or has been, convicted of a qualifying Federal offense ... or a qualifying military offense ...."[7] Qualifying offenses include "murder; voluntary manslaughter; other homicide offenses; offenses relating to sexual abuse, sexual exploitation or other abuse of children, and transportation for illegal sexual activity; kidnapping; burglary; and any attempt or conspiracy to commit those crimes."[8] BOP policies provide that offenders in its custody are to be screened by local Community Corrections Management Offices to determine whether they are qualified offenders under the DNA Act.[9] Once an inmate arrives at his designated correction facility, the facility's Health Services staff will arrange to collect a DNA sample during the routine physical examination.[10]

The Act also amended statutes relating to a district court's

---

[7] 42 U.S.C. § 14135a(a)(1); *see also* 28 C.F.R. § 28.12(a) (Department of Justice's implementing regulations).

[8] H.R. REP. No. 106-900, at 19 (2000), *reprinted in* 2000 U.S.C.C.A.N. 2323, 2334.

[9] Memorandum from Michael B. Cooksey, Assistant Director, Correctional Programs Division, et al., to all Chief Executive Officers (Feb. 12, 2002).

[10] *Id.*

sentencing of federal offenders to probation or supervised release, requiring district courts to impose as a mandatory condition that the defendant cooperate in the collection of a DNA sample.[11] The amended supervised release provision reads, "[t]he court shall order, as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to ... the DNA Analysis Backlog Elimination Act of 2000."[12] The Administrative Office of the United States Courts has instructed probation officers that they should not require an offender on probation or supervised release to submit a sample if the BOP obtained one during the offender's incarceration.[13] The DNA Act makes the failure to cooperate in the taking of a sample a

---

[11] 18 U.S.C. §§ 3563(a)(9), 3583(d); H.R. REP. No. 106-900, at 21 (2000), *reprinted in* 2000 U.S.C.C.A.N. 2323, 2337 ("Section 7 of the bill amends section 3563 of title 18 of the United States Code to require Federal courts to order, as a condition of any imposed term of probation, that defendants cooperate in the collection of DNA samples authorized under the bill. It also amends section 3583 of title 18, United States Code, to require Federal courts to order, as a condition of any imposed term of supervised release, that defendants cooperate in the collection of DNA samples authorized under the bill.").

[12] § 3583(d); *see also* § 3563(a)(9) ("The [sentencing] court shall provide, as an explicit condition of a sentence of probation ... that the defendant cooperate in the collection of a DNA sample from the defendant if the collection of such a sample is authorized pursuant to ... the DNA Analysis Backlog Elimination Act of 2000.").

[13] Memorandum from the Administrative Office of the United States Courts, to all Chief Probation Officers (Dec. 14, 2001).

misdemeanor offense.[14]

II

On November 8, 2001, James Carmichael robbed a bank in Brownsville, Texas. Armed with a .357 handgun which he pointed at a customer, he made off with approximately $17,000 in cash. When apprehended several hours later, he admitted having robbed the bank, and a search turned up the gun and the money. Carmichael was indicted on counts of aiding and abetting bank robbery and using a firearm during the commission of a bank robbery; he pleaded guilty to both charges. The district court sentenced Carmichael to 117 months' imprisonment and three years' supervised release, and ordered Collins to submit to DNA sampling in accordance with the DNA Act.

On November 20, 2001, Gabriel Collins and an accomplice robbed a bank in Katy, Texas. They passed a note to the teller stating that they were armed and took $5,955 in cash. However, the cash was rigged with a dye pack and bait bills, and the police eventually tracked down Collins when he used dye-stained bills to pay for auto repairs. Collins confessed to the robbery and pleaded guilty to the single count of aiding and abetting bank robbery. The district court sentenced him to thirty-seven months' imprisonment and three years' supervised release, and required that pursuant to the DNA Act the probation officer be allowed to collect

---

[14] 42 U.S.C. § 14135a(a)(5); *see also* 28 C.F.R. § 28.12(c).

-6-

DNA from Collins as a mandatory condition of supervised release.

Both Carmichael and Collins now appeal their sentences, alleging that they should not be required to provide a DNA sample, either in prison or on supervised release, because the DNA Act is unconstitutional. Their actions were consolidated into this single appeal.

III

Carmichael and Collins challenge the constitutionality of the DNA Act on two grounds. First, they argue that the Act is an unconstitutional exercise of congressional power; and, second, that the Act is unreasonable under the Fourth Amendment, both as to prisoners and as to criminals on supervised release. The Government asserts that the appellants' constitutional claim relating to the DNA Act's provision requiring collection of their DNA while they are incarcerated relates to "conditions of confinement," which cannot be appealed on direct review but rather must be brought in a separate civil action. It further contends that the defendants' claim regarding the portion of the Act requiring collection of the DNA while they are on supervised release is unripe for review, since the Act requires collection of the appellants' DNA samples while they are incarcerated so in all likelihood they will not be asked to submit a sample while on supervised release. We find the Government's arguments persuasive.

A

Collins and Carmichael brought this direct appeal of their

sentences under 18 U.S.C. § 3742, which authorizes, among other things, appeal of a sentence imposed "in violation of law."[15] The Government contends that the DNA's mandate that the BOP collect DNA samples from qualified federal offenders is not part of the district court's sentence. Rather, that portion of the Act operates independently from appellants' sentences. Because the DNA Act is simply one of the myriad regulations of prison life, asserts the Government, it amounts to a condition of confinement, which Collins and Carmichael can challenge only in a separate civil action filed after exhausting their administrative remedies.[16]

Like the Government, we conclude that neither the text of the Act nor the legislative history suggests that district courts, at sentencing, are to play any part in the collection of DNA samples by BOP officials. The statute orders "[t]he Director of the Bureau of Prisons" to "collect a DNA sample from each individual in the custody of the Bureau of Prisons who is, or has been, convicted of a qualifying Federal offense."[17] This provision demonstrates that

---

[15] 18 U.S.C. § 3742(a)(1).

[16] *See* 18 U.S.C. § 3626 (describing appropriate remedies with respect to prison conditions); 42 U.S.C. § 1997e(a) (Prison Litigation Reform Act) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Groceman v. U.S. Dep't of Justice*, No. 3:01-CV-1619-G, 2002 WL 139559 (N.D. Tex. June 26, 2002) (civil action for injunctive relief brought by prisoners to prevent the BOP from taking DNA samples).

[17] § 14135a(a)(1).

-8-

the BOP not only has power to take the samples, but is vested with the authority to determine who is eligible for DNA sampling. The legislative history reinforces this interpretation by explaining that the Act "*direct*[*s*] *the Bureau of Prisons* (BoP) to collect a DNA sample from each person in federal custody who has been convicted of certain felonies or sexual offenses."[18] That the Act took prison sampling out of the sentencing court's hands is reinforced by its provisions relating to supervised release and probation, which in contrast "require *Federal courts* to order, as a condition of any imposed term of [probation or supervised release], that defendants cooperate in the collection of DNA samples authorized under the bill."[19]

Collins and Carmichael argue that the DNA sampling requirement is no different than statutes requiring restitution, criminal forfeiture, or special assessments, which constitute part of a criminal sentence. However, each of these statutes provide that the district court "may" or "shall order" imposition of the sanction,[20] while the portion of the DNA Act relating to collection

---

[18] H.R. REP. No. 106-900, at 14 (2000), *reprinted in* 2000 U.S.C.C.A.N. 2323, 2329 (emphasis added).

[19] *Id.* at 21, *reprinted in* 2000 U.S.C.C.A.N. 2323, 2337; *see also id.* at 14, *reprinted in* 2000 U.S.C.C.A.N. 2323, 2329 ("The bill would *direct the Judiciary* to collect a DNA sample from each person under federally supervised release who has been convicted of certain felonies or sexual offenses." (emphasis added)).

[20] 18 U.S.C. § 3663 ("The court, when sentencing a defendant convicted of [certain offenses], may order, in addition to or, in

of DNA samples during incarceration lacks reference to any role a district court is to play in that process. We also reject their contention that suits challenging conditions of confinement relate only to complaints such as cell overcrowding and inadequate medical care. Rather, the Supreme Court has instructed that suits challenging conditions of confinement include prisoner petitions alleging not only "continuous conditions," but "isolated episodes of unconstitutional conduct."[21] Stated another way, suits attacking conditions of confinement implicate "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[22] Accordingly, we hold that the DNA Act's provision for the BOP's collection of federal offenders' DNA during incarceration is

---

the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense ...."); 18 U.S.C. § 3554 ("The court, in imposing a sentence on a defendant who has been found guilty of [certain offenses,] shall order ... that the defendant forfeit property to the United States ...."); 18 U.S.C. § 1467 ("The court shall order forfeiture of property ... if – (1) the trier of fact determines, beyond a reasonable doubt, that such property is subject to forfeiture ...."); 18 U.S.C. § 3013 ("The court shall assess on any person convicted of an offense against the United States ....").

[21] *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991); *see also Booth v. Churner*, 206 F.3d 289, 294 (3d Cir. 2000) ("... [T]he unanimous Court interpreted the ... 'conditions of confinement' language – one half of the definition of 'prison conditions' in § 3626(g)(2) – to include all inmate petitions, not only those regarding 'continuous conditions,' but 'isolated episodes of unconstitutional conduct,' such as the petitioner's claim of excessive force ...." (quoting *McCarthy*, 500 U.S. at 139)), *aff'd*, 532 U.S. 731 (2001).

[22] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

not part of appellants' sentence, but is rather a prison condition that must be challenged through a separate civil action after exhaustion of administrative remedies.

B

The Government concedes that the DNA Act's provisions relating to collection of DNA samples during an offender's probationary or supervised release period are part of the appellants' sentences, because they require a sentencing court to impose DNA collection as a mandatory condition of probation or supervised release.  However, the Government asserts that we must dismiss the remainder of the appeal for lack of jurisdiction because appellants' constitutional claim regarding the DNA Act's provisions for collection of the DNA during supervised release is not yet ripe.  Only if the BOP fails to execute its statutorily-imposed duty to collect the sample will appellants be required to submit to sampling during supervised release.  The Government posits that this renders the possibility of DNA sampling during supervised release speculative, and in this case ripeness considerations mitigate against premature adjudication since we are called upon by the defense to render an act of Congress unconstitutional.

"Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review."[23]  A claim is not ripe for review

---

[23] *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000).

if "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."[24]  The Government asserts that not only is it possible that the supervised release condition appellants complain of will never come to fruition, but it is likely, because unless the BOP "flouts the multiple layers of legal obligations placed upon it," by the time the appellants are released it will already have collected a DNA sample from them in accordance with the Act.  We agree.  This scenario is distinct from those cases pointed to by appellants in which we have taken up objections to supervised release conditions on direct appeal of the sentence, because those related to conditions not contingent on future events.[25]  Here it is a matter of conjecture whether either Collins or Carmichael will be forced to submit to DNA sampling during supervised release.  We therefore dismiss the remainder of this appeal for lack of jurisdiction.

---

[24] *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

[25] *See United States v. Warden*, 291 F.3d 363, 365 (5th Cir. 2002) (addressing whether the district court's oral pronouncement of supervised release conditions varied from its written pronouncement, and whether the probation officer could determine the defendant's ability to pay for the court-ordered drug treatment and other programs); *United States v. Paul*, 274 F.3d 155, 164-66 (5th Cir. 2001) (addressing the defendant's challenge to special conditions requiring him to avoid contact with minors, prohibiting him from engaging in any occupation or volunteer service that would expose him to minors, and instructing him to avoid places, establishments, and areas frequented by minors); *United States v. Mills*, 959 F.2d 516, 519 (1992) (evaluating a condition imposing an occupational restriction).

APPEAL DISMISSED.