United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 19, 2007**

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals
for the Fifth Circuit*

No. 04-41364

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JOSEPH MICHAEL BUCHANAN,

        Defendant - Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

Before BARKSDALE, BENAVIDES, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Following a jury trial, Joseph Buchanan was convicted of four counts of receiving child pornography transported in interstate commerce by computer[1] and one count of possession of child pornography.[2] Buchanan appeals his conviction and sentence on numerous grounds. Because the first four counts against Buchanan are multiplicitous, we vacate them and remand with instructions to reinstate only one of the convictions and to

---

[1] 18 U.S.C. § 2252(a)(2) (2000).

[2] 18 U.S.C. § 2252(a)(4)(A).

resentence him consistent with this opinion.  All of Buchanan's other claims lack merit.

**I**

Joseph Buchanan was employed by the United States Army Corps of Engineers as a park ranger and served at its Lake Texoma location.  Each ranger was assigned an individual computer that required a unique password for access and would log the actions on the computer to a record tied to the specific ranger.  In early 2001, a Corps system administrator in Tulsa received a complaint from the Texoma station that the office's internet access was slow.  The administrator used a program to determine that Buchanan's computer was slowing down the office's access by connecting to "an X-rated porn site."  The Corps began monitoring Buchanan's computer use and determined that he continued to view pornography on his office computer.

When confronted, Buchanan admitted the misuse and stated he would never do it again.  In March 2002, Ron Jordan, the Lake Texoma manager, received a report that Buchanan was again viewing pornography.  Using the network administrator's password, Jordan accessed Buchanan's computer and discovered pornographic photographs and movies involving adults as well as bestiality.  Jordan printed out an image and questioned Buchanan, who again admitted to viewing the pornography and promised to cease these activities.  In April, Jordan received another report about Buchanan, found pornographic images on a scan of Buchanan's computer, and suspended Buchanan for two days.

In August 2002, Jordan resumed monitoring Buchanan's computer use after receiving another report that Buchanan was viewing pornography on his work computer.  On August

2

28, Jordan found pornographic images in Buchanan's temporary internet folder—the location on the hard drive in which data from accessed webpages, including images, are automatically stored. Jordan copied some of the temporary internet folder files from Buchanan's computer to his computer. The next day, Jordan saw that more files had been added to Buchanan's temporary internet folder. Some of these files were images of nude, prepubescent children. Jordan noticed that files were being added and deleted as he viewed the folder. A number of graphic files with sexually explicit names were automatically downloaded—showing that someone was viewing a webpage or webpages containing these images on the internet—over a span of several minutes during a single computer session. Jordan copied some of the files, including both child and adult pornography, onto a compact disc that was later turned over to law enforcement officials.

FBI Agent Wes Wheeler investigated Buchanan's computer use and found that four large images on the CD depicted children from 10 to 12 years old engaged in sexually explicit conduct. Wheeler met with Buchanan on September 12, 2002 and showed him images printed from the CD. Buchanan admitted that he had visited internet sites containing child pornography and that he had in the past saved such images, viewed them, and later deleted them. He said the sites he typically visited contained both adult and child pornography.

An FBI computer forensic examiner determined that the CD contained 127 images, including 54 depicting minors from 7 to 15 years old. The examiner found fifty small, "thumbnail" images depicting minors—pictures displayed on a web page to preview an

image, which a viewer could click to access a larger, higher-resolution version of the same image—in addition to the four larger images of child pornography Agent Wheeler had earlier identified. The examiner also used sophisticated software to find a number of encrypted files on Buchanan's hard drive. The files were password-protected and buried nine directories deep through the creation of multiple subdirectories. The examiner further found an encryption program, called Scramdisk, designed to disguise files. After a thorough sweep of the hard drive with various software programs, the examiner found over 3,000 pornographic images on the hard drive, including more than 300 images of children from 3 to 15 years old engaged in sexually explicit conduct, each of which was hidden and password-protected.

A superseding indictment charged four separate counts of receipt and attempted receipt of child pornography under 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1)—one count for each of the four larger images from the CD provided by Jordan. A fifth count charged Buchanan with possession of child pornography under 18 U.S.C. § 2252(a)(4)(A) based on eleven images found on Buchanan's hard drive.

Following a jury trial, Buchanan was convicted on all five counts and sentenced to 71 months in prison for each of the first four counts and 60 months for the fifth count, all to be served concurrently. Buchanan was also assessed a $100 special assessment for each count and a $5,000 fine—$5,500 total. Buchanan appeals both his convictions and sentence.

**II**

Buchanan argues that the convictions for receipt of child pornography in counts one through four of the superceding indictment are multiplicitous. Convictions are multiplicitous when the prosecution charges "a single offense in more than one count."[3] The superseding indictment alleged that Buchanan had knowingly received and attempted to receive one or more visual depictions of minors engaging in sexually explicit conduct by means of a computer and the internet, and the indictment then listed the four counts in a table with information about four images, as follows:

| Count | Image | Description |
|-------|-------|-------------|
| 1 | andy—1[1].jpg | [omitted][4] |
| 2 | hard 11[1].jpg | [omitted] |
| 3 | matt[1].jpg | [omitted] |
| 4 | Boyshard4[1].jpg | [omitted] |

The district court denied Buchanan's motion to quash the indictment, and we review that ruling *de novo*.[5] Buchanan maintains that the indictment does not allege that his receipt of the four images was the result of four separate transactions. He also contends that the four images were automatically downloaded by the computer he was using into temporary internet folders while he was viewing images of adults contained on the same, single webpage.

---

[3]*United States v. De La Torre*, 634 F.2d 792, 794 (5th Cir. 1981).

[4]The description of the content of each image is not at issue and has been omitted as unnecessary to our decision.

[5]*United States v. Kimbrough*, 69 F.3d 723, 728-29 (5th Cir. 1995).

The rule against multiplicity is grounded in the Fifth Amendment's prohibition against double jeopardy, intending "to prevent multiple punishments for the same act."[6] We have held that "'[t]he test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not.'"[7] We have said, "Where a multipart transaction raises the prospect of multiplicity under a single statute, the question becomes 'whether separate and distinct prohibited acts, made punishable by law, have been committed.'"[8] When "'the jury is allowed to return convictions on multiplicious counts, the remedy is to remand for resentencing, with the government dismissing the count(s) that created the multiplicity'" because "'[t]he chief danger raised by a multiplicious indictment is the possibility that the defendant will receive more than one sentence for a single offense.'"[9]

Buchanan was convicted in counts one through four of four separate violations of 18 U.S.C. § 2252(a)(2), which provides:

(a)    Any person who –
                              * * *
       (2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains

_____

[6]*Id.* at 729.

[7]*United States v. Reedy*, 304 F.3d 358, 363 (5th Cir. 2002) (quoting *United States v. Nguyen*, 28 F.3d 477, 482 (5th Cir. 1994)).

[8]*Id*. at 363-64 (quoting *United States v. Shaid*, 730 F.2d 225, 231 (5th Cir. 1984)).

[9]*United States v. Galvan*, 949 F.2d 777, 781 (5th Cir. 1991) (quoting *United States v. Lemons*, 941 F.2d 309, 317 (5th Cir. 1991)).

materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if--

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct. . . .[10]

At the time of the offense, the penalty for violating or attempting to violate this section was imprisonment for not more than 15 years, unless there has been a prior conviction for certain crimes, in which event the penalty was imprisonment for not less than 5 years and not more than 30 years.[11]

We have specifically addressed multiplicity and § 2252 on at least two occasions.[12] In *Gallardo*, a defendant was convicted under § 2252 of four counts of mailing child pornography.[13] The defendant had mailed three envelopes to different locations at one time

---

[10]18 U.S.C. § 2252(a)(2).

[11]*Id*. § 2252(b)(1) (2000). Prior to a 2003 amendment, this section provided:

(b)(1) Whoever violates, or attempts or conspires to violate, paragraphs (1), (2), or (3) of subsection (a) shall be fined under this title or imprisoned not more than 15 years, or both, but if such person has a prior conviction under this chapter [18 U.S.C.A. § 2251 et seq.], chapter 109A [18 U.S.C.A. § 2141 et seq.], or chapter 117 [18 U.S.C.A. § 2421 et seq.], or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 5 years nor more than 30 years.

[12]*See United States v. Reedy*, 304 F.3d 358, 367 (5th Cir. 2002); *United States v. Gallardo*, 915 F.2d 149 (5th Cir. 1990).

[13]*Gallardo*, 915 F.2d at 149.

7

and a fourth envelope on a later date.[14]  He was charged with a separate count for each envelope.[15]  On appeal, the defendant asserted that the three counts stemming from the three envelopes mailed at the same time should have been reduced to a single count.[16]  Applying a previous holding regarding mail fraud,[17] we held that "each separate use of the mail to transport or ship child pornography should constitute a separate crime because it is the act of either *transporting or shipping* that is the central focus of this statute."[18]  "The number of photographs in each envelope is irrelevant" for determining the appropriate number of counts.[19]  This court reasoned by analogy that "a defendant arrested with one binder containing numerous photographs has committed only one act of transportation,"[20] and "a single transportation of two women is but one violation of the Mann Act."[21]  The four convictions were upheld because the defendant mailed four envelopes.[22]

In *United States v. Reedy*, this court held that § 2252 "does not speak to the question"

---

[14]*Id.* at 150.

[15]*Id.*

[16]*Id.* at 150-51.

[17]*United States v. Blankenship*, 746 F.2d 233, 236 (5th Cir. 1984).

[18]*Gallardo*, 915 F.2d at 151.

[19]*Id.*

[20]*Id.* (citing *United States v. Meyer*, 602 F. Supp. 1480, 1481-82 (S.D. Cal. 1985)).

[21]*Id.* (citing *Bell v. United States*, 349 U.S. 81, 84 (1955)).

[22]*Id.*

8

of "what 'unit of prosecution' should apply" and therefore, that the rule of lenity governed the outcome.[23]  The defendants in that case were convicted of multiple counts of violating § 2252 for transporting visual depictions of minors engaged in sexually explicit conduct.[24] The defendants operated a sign-on, screening and age verification system for pornographic websites, and charged subscribers by website.[25]  The defendants contended that they should have been charged with only ten counts because there were only ten websites containing child pornography.[26]  The district court "used the total number of images appearing on all the websites as the relevant 'unit of prosecution' for determining the number of counts for violating § 2252."[27]  This court disagreed, concluding that "the rule of lenity require[d] resentencing based on the number of websites rather than the number of individual images."[28]

In *Reedy*, this court began its analysis by explaining that "the 'unit of prosecution' for a crime is the actus reus, the physical conduct of the defendant."[29]  In examining § 2252, *Reedy* considered whether "a 'visual depiction' is neatly confined to an individual image or encompasses a broader set of items, such as books, magazines, movies, or other

---

[23]304 F.3d 358, 361 (5th Cir. 2002).

[24]*Id.*

[25]*Id.* at 361-62.

[26]*Id.* at 365 n.5.

[27]*Id.* at 365.

[28]*Id.* at 361.

[29]*Id.* at 365 (quoting *United States v. Prestenbach*, 230 F.3d 780, 783 (5th Cir. 2000)).

9

collections."[30]  The court observed that 18 U.S.C. § 2256, which defines terms used in

§ 2252, provides that "'visual depiction'" includes "'any photograph, film, video, picture,

or computer or computer-generated image or picture, whether made or produced by

electronic, mechanical, or other means.'"[31]  This court recognized that this definition

"includes both items that may be classified as a single shot of a single scene, such as a still

photograph, and series of shots of several scenes or ongoing action, such as a film or video"

and that § 2252 therefore "contemplates 'visual depictions' as constituting both single images

and more than one image."[32]  This court also noted that § 2252(c)(1) "creates an affirmative

defense for persons possessing 'less than three matters containing any visual depiction,'"[33]

and reasoned that "a 'matter' is larger and inclusive of a 'visual depiction,'" but that the

terms used in the statute "do not explain the size or inclusiveness of a 'visual depiction.'"[34]

---

[30]*Id*. at 366.

[31]*Id*. (quoting former 18 U.S.C. § 2256(8)).  Although the citation in *Reedy* is to § 2256(5), the actual quotation is from § 2256(8), which defines "child pornography" as "any visual depiction, including any photograph, film . . . ."  The definition of "visual depiction" is found in § 2252(5), which says that "'visual depiction' includes undeveloped film and video-tape, and data stored on computer disc or by electronic means which is capable of conversion into a visual image."

[32]*Id*.

[33]*Id*. (observing that § 2252(a)(4)(B) "forbids the possession of 'books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction' sent through interstate commerce" but that § 2252(c)(1) "creates an affirmative defense [to prosecution under § 2252(a)(4)] for persons possessing less than three matters containing any visual depiction," and therefore concluding that "references [in §§ 2252(a)(4)(B) and 2252(c)(1)] tell us that a 'matter' is larger and inclusive of a 'visual depiction,' but they do not explain the size or inclusiveness of a 'visual depiction'").

[34]*Id*.

The *Reedy* decision then turned to precedent regarding related issues and focused on the defendants' physical conduct, which was bundling images by website:

> Consider the Reedys' actions . . . . The Reedys chose to bundle their service by website; they charged for subscriptions to individual websites under the KeyZ plan. As the defendant in *Gallardo* chose to collect several pictures in an envelope, or the publisher of a magazine of child pornography chooses to collect several images in a periodical, the Reedys chose to bundle in this manner. *Gallardo* cuts slightly in favor of the Reedys' interpretation.[35]

This court expressed its dismay at the government's suggestion that it could hold the Reedys criminally liable for each time that a customer downloaded an image.[36] Ultimately, this court concluded that it had reached the "same impasse"[37] that the Supreme Court had reached in *Bell v. United States*, in which the Mann Act's prohibition of transporting "any woman or girl" in interstate commerce for immoral purposes was found to be ambiguous.[38] Quoting *Bell*, this court said that "'argumentative skill'" "'could persuasively and not unreasonably reach' either interpretation" offered by the parties and therefore, that "the 'ambiguity should be resolved in favor of lenity.'"[39]

---

[35]*Id*. at 367.

[36]*Id*. at 365 n.6:

Take, hypothetically, one website with 100 child pornographic pictures. If each of 100 subscribers were to download each of the 100 pictures just once, the defendant could be charged with 10,000 counts, for a potential sentence of 150,000 years. Such an extreme interpretation of Congressional intent undermines the reliability and credibility of the government's case on appeal.

[37]*Id.* at 367.

[38]349 U.S. 81, 82 (1955).

[39]*Reedy*, 304 F.3d at 367.

11

The *Reedy* decision limited its holding to the facts before it, in which the convictions involved "a security screening system that aggregates websites containing child pornography," expressly stating, "We do not intimate a particular result where a website operator uses a single site to aggregate and distribute individual pictures."[40] The court expressed the concern that "child pornographers merely could change their distribution methods if we announced a bright-line rule," and asserted, "We conclude only, on the facts of this unique case involving a middleman and security screening system, that the court cannot sentence the Reedy's based on each individual picture posted."[41]

It is in light of these precedents that we examine the record before us and conclude that the government failed to allege or prove with regard to counts one through four that Buchanan engaged in more than one transaction in violation of 18 U.S.C. § 2252. As in other contexts, the government bore the burden of establishing multiple counts by charging and proving separate receipts of child pornography.[42] The indictment failed to allege separate receipt of the four images identified.

Nor did the expert or other testimony at trial establish that Buchanan took more than

[40]*Id*. at 368 n.14.

[41]*Id.*

[42]*See United States v. Hodges*, 628 F.2d 350, 351-52 (5th Cir. 1980) (holding that under former 18 U.S.C. § 922(h)(1), which prohibited a felon from receiving in interstate commerce "any firearm," simultaneous possession or receipt of multiple firearms can only be charged as a single offense and that the government must establish that a defendant "received the firearms at different times or stored them in separate locations"); *United States v. Rosenbarger*, 536 F.2d 715, 721 (6th Cir. 1976) (stating that "it was the Government's burden to establish separate offenses under the statute").

one action to receive the four images made the basis of counts one through four. The evidence showed only that when Buchanan visited a webpage, his computer automatically downloaded the images on that webpage to his computer's temporary internet folder. The differing times shown on the compact disc to which some of the temporary internet files were copied[43] did not establish that the images had come from different webpages or that Buchanan had to take any action other than navigating to a single webpage for the images to be captured in the temporary internet file folders. There was also uncontroverted testimony that the date and time stamps on the copied files were not necessarily the actual times that the images were automatically downloaded to Buchanan's temporary internet folder due to the machinations of some computer programs.

The fact that the four images made the basis of counts one through four were larger than thumbnail images on the compact disc to which some of Buchanan's temporary internet file folders were copied was not explained at trial. The record was silent as to whether Buchanan would have had to have "clicked on" each of the four larger images separately to enlarge them or whether they were larger on the webpage itself. We note that there is only one copy of three of the large images on the disc. There is not a separate thumbnail image for these three images on the disc. We do not resolve today whether a separate mouse click

---

[43]The dates and times shown on the disc for the four images were as follows:

| andy—1[1].jpg | 8/29/2002 10:33 AM |
| hard 11[1].jpg | 8/29/2002 10:45 AM |
| matt[1].jpg | 8/29/2002 10:35 AM |
| Boyshard 4[1].jpg | 8/29/2002 10:38 AM |

on an image to maximize its size would suffice as a separate receipt of child pornography.[44]

Based on the facts before us, the government did not offer any proof that Buchanan took more than one action to receive the four images that were the basis of his convictions under § 2252(a)(2). His convictions were therefore multiplicitous.

Buchanan has suffered both a financial injury because of the special assessments for each count[45] as well as the other adverse collateral consequences of multiple convictions.[46] Thus Buchanan's four convictions for receipt of child pornography under §2252(a)(2) are vacated, and the district court should reinstate a single count and resentence Buchanan accordingly.

We note that the number of images received from a single website is relevant in determining the applicable Guidelines sentencing range under the currently applicable Guidelines.[47] An offense involving at least 10 but fewer than 150 images gives rise to a 2-level enhancement, an offense involving at least 150 but fewer than 300 results in a 3-level

---

[44]*But see United States v. LaBean*, 56 M.J. 587, 589-90 (C.G. Ct. Crim. App. 2001) (holding that 25 specifications based on the defendant's maximizing 25 images of child pornography contained on a single website by clicking on the file names did not constitute an unreasonable multiplication of charges, a military justice concept designed to serve as a limitation on prosecutors' discretion, which that court held was distinct from multiplicity, "a concept grounded in double jeopardy [and] designed to prevent multiple convictions and punishments").

[45]18 U.S.C. § 3013(a)(2) (2000) (requiring a $100 special assessment for each felony conviction).

[46]*Ball v. United States*, 470 U.S. 856, 864-65 (1985).

[47]U.S. SENTENCING GUIDELINES MANUAL § 2G2.2(b)(7) (2006) (adjusting the sentencing level based on the number of images involved in the count).

enhancement, an offense involving at least 300 images but fewer than 600 results in a 4-level increase, and 600 or images results in an increase of 5 levels.[48] If the number of images is such that the Guidelines do not adequately account for them, the sentencing court may consider an upward departure.[49] However, the 2001 Guidelines were used in establishing Buchanan's sentencing range because they were in effect at the time of his offense, and they result in a lower sentencing range than the current Guidelines.

### III

Buchanan also attacks his convictions on a number of other grounds. He contends that the district court erred in denying his motion for a continuance to allow his expert to examine and analyze the hard drive. We will reverse the denial of a continuance only "when the district court has abused its discretion and the defendant can establish that he suffered serious prejudice."[50] We generally consider only the reasons for continuance provided to the district court.[51]

Buchanan claims that his expert was not allowed sufficient time to analyze the hard drive, but he does not provide any evidence to support this claim. Prior to trial, Buchanan's counsel represented that the expert needed eight to ten hours to conduct his analysis, which

---

[48]*Id.*

[49]*See United States v. Jones*, 444 F.3d 430, 440-41 (5th Cir.), *cert. denied*, 126 S. Ct. 2958 (2006) (No. 05-11153).

[50]*United States v. Scott*, 48 F.3d 1389, 1393 (5th Cir. 1995) (internal quotation marks and citation omitted).

[51]*Id.*

15

the district court allowed following voir dire. Other than Buchanan's conclusory statement on appeal, there is nothing in the record to indicate that the time afforded was insufficient. This argument is thus meritless.

Buchanan further alleges that the evidence was insufficient to sustain his convictions. Because Buchanan failed to move for acquittal after the evidence was presented, he did not preserve the sufficiency issue. We therefore view his challenge under the more stringent "manifest miscarriage of justice" standard,[52] which requires a record "devoid of evidence of guilt or the evidence [is] so tenuous that a conviction is shocking."[53]

Buchanan contends that the evidence is insufficient to show intent to receive child pornography with regard to the first four counts and possession of child pornography with regard to the fifth count. Buchanan admitted to viewing pornography for significant amounts of time on August 28 and August 29, 2002. He also admitted to FBI Agent Wheeler that he had previously viewed and saved images of child pornography and that he was aware that the website he accessed on August 29 contained images of child pornography in addition to adult pornography that he confessed he had intended to view. Moreover, the evidence showed that Buchanan had purposefully saved hundreds of other images of child pornography, which he took pains to encrypt and hide. There is considerable evidence of guilt, and Buchanan's convictions are not shocking.

---

[52]*See United States v. Pofahl*, 990 F.2d 1456, 1467 n.7 (5th Cir. 1993).

[53]*United States v. Avants*, 367 F.3d 433, 449 (5th Cir. 2004).

Buchanan complains that the district court improperly excluded evidence that some of his coworkers used their work computers to view pornography. He contends this evidence supports his theory that someone else placed the encrypted files on his computer. Prior to trial, the Government filed a motion in limine seeking to exclude this evidence. The district court withheld a definitive ruling until Buchanan sought to introduce the evidence. Over the government's objection, the district court allowed the evidence. Because the district court did not exclude any evidence that Buchanan sought to introduce on this point, his argument is meritless.

Buchanan next complains of the jury instructions. Buchanan concedes that his counsel did not object and that review is for plain error. Buchanan bears the burden of proving that there is a "clear" or "obvious" error that affected his substantial rights.[54] We have discretion to correct such an error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings."[55]

Buchanan argues that the district court did not instruct the jury that it had to find that Buchanan intended to commit the offenses set out in counts one through four. To the contrary, the district court instructed the jury that Buchanan must have intended to receive the child pornography and therefore committed no error.

Buchanan also complains that the district court failed to instruct the jury to ignore a

___

[54]*United States v. Olano*, 507 U.S. 725, 732-34 (1993).

[55]*Id.* at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

17

prejudicial remark made by a potential juror during voir dire when one of the members of the jury venire implied that Buchanan must be guilty because he was charged with multiple counts. A juror did make such a comment during voir dire, and the court struck her for cause. Because Buchanan's counsel did not request a curative instruction, we review for plain error. Given the overall evidence supporting the jury's verdict and the district court's instruction that the jury should consider the counts separately, Buchanan has not shown that any alleged error affected his substantial rights or that the failure to correct any error would seriously impair the fairness, integrity, and public reputation of the judicial proceedings.

Buchanan contends that Ronald Crank's testimony exceeded the proper scope of rebuttal testimony. After the Government established that the encrypted pornographic images were accessible by using the passwords "Bronco" and "Black," Crank, Buchanan's supervisor, testified that Buchanan owned a Bronco and a black truck. Crank's testimony thus linked the passwords to Buchanan. Buchanan complains that he was unable to rebut this testimony and that he could have done so by showing that other employees also owned black vehicles. Buchanan's counsel did not object to Crank's testimony as exceeding the scope of rebuttal, so review is for plain error, using the same standard as described above.

A district court has broad discretion to control the scope of rebuttal evidence, and its decision regarding rebuttal testimony will rarely be disturbed on appeal.[56] Buchanan could have challenged Crank's testimony on cross-examination or by presenting surrebuttal

---

[56]*United States v. Sanchez*, 988 F.2d 1384, 1393 (5th Cir. 1993).

evidence,[57] but he failed to do so. Moreover, Crank's testimony was duplicative of other evidence connecting Buchanan to the passwords. In light of these facts, Buchanan has not shown that any error in allowing Crank's testimony affected his substantial rights or that the failure to correct the error would seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Buchanan argues that his trial counsel provided ineffective assistance of counsel for failing to offer evidence that the encryption software hidden on Buchanan's computer would not function with the Windows 2000 operating system and that other employees owned Broncos. To obtain relief on grounds of ineffective assistance of counsel, a petitioner must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."[58]

This court does not ordinarily review claims of ineffective assistance of counsel on direct appeal unless the record is sufficiently developed to allow a fair evaluation of the merits of the claim.[59] The preferred method for such claims is via collateral review.[60] Because the record is not sufficiently developed, we will not consider the ineffective assistance of counsel claim on direct appeal.

---

[57]*See United States v. Alford*, 999 F.2d 818, 821 (5th Cir. 1993) (discussing the district court's discretion to allow surrebuttal).

[58]*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[59]*United States v. Lampazianie*, 251 F.3d 519, 523 (5th Cir. 2001).

[60]*See* 28 U.S.C. § 2255 (2000).

19

**IV**

Buchanan challenges several sentencing enhancements, the district court's refusal to award an acceptance of responsibility reduction, his supervised release sentence, and the terms and conditions of his supervised release. None of these alleged errors were preserved in the district court, so the review is for plain error.

Buchanan argues that the enhancement of his sentence based on facts not found by a jury violated his Sixth Amendment rights, citing *United States v. Booker*.[61] The district court sentenced Buchanan before *Booker* issued. Because we are vacating the first four counts, the issue is moot as to those counts. With regard to count five, Buchanan failed to raise this matter in the trial court, and review is for plain error. While sentencing under a mandatory scheme based on facts, other than a prior conviction, not found by a jury does violate the Sixth Amendment, Buchanan cannot show that his substantial rights were affected because there is no indication from the record that the district court would have imposed a lesser sentence under an advisory scheme.[62]

Buchanan also asserts that the district court erred in applying a two-level enhancement with respect to count five for possession of 10 or more items containing a visual depiction involving the sexual exploitation of a minor.[63] Buchanan failed to object at trial, so we

---

[61]543 U.S. 220 (2005).

[62]*United States v. Duarte-Juarez*, 441 F.3d 336, 338 (5th Cir. 2006) (citing *United States v. Infante*, 404 F.3d 376, 394-95 (5th Cir. 2005)).

[63]U.S. SENTENCING GUIDELINES MANUAL § 2G2.4(b) (2001).

review the enhancement for plain error. Buchanan argues that the images were all found within one or two encrypted computer files and therefore that there were at most two "items." The images inside the encrypted files were files themselves. The encrypted files hid more files within. Once the encrypted files were opened, the image files were accessible. In this sense, the encrypted file protected the image files much like a book cover or CD-rom case. At least two courts have held that individual computer files count as "items" for the purpose of section 2G2.4.[64] Despite being contained within an encrypted file, each graphic file should count as an "item" for sentence enhancement purposes. Buchanan has failed to demonstrate a clear or obvious error burdening his substantial rights.

Buchanan also argues that the district court improperly enhanced his sentences as to counts one through four with a four-level enhancement for involvement of material portraying sadistic or masochistic conduct.[65] Although we have vacated the sentences for counts one through four, we have remanded for re-sentencing, and it is likely that this same issue will recur. We therefore address it.

According to Buchanan, the image used to enhance his sentences for counts one through four was alleged only in count five and should not have been considered. Buchanan did not object to the consideration of the image as relevant conduct, so the review is for plain error. In support of his position, Buchanan cites *United States v. Fowler*, in which this court

---

[64]*See, e.g.*, *United States v. Harper*, 218 F.3d 1285 (11th Cir. 2000); *United States v. Demerritt*, 196 F.3d 138 (2d Cir. 1999).

[65]U.S. SENTENCING GUIDELINES MANUAL § 2G2.4(b) (2001).

21

held that possession of such an image was not relevant conduct with respect to a conviction for interstate transportation of child pornography.[66] The defendant in *Fowler* sent images of child pornography to an undercover agent posing as a female minor.[67] When the defendant's home was searched, agents found additional images depicting sadistic conduct saved on discs from previous years.[68] Possession of the images did not constitute relevant conduct because they were not part of the same course of conduct as the offense of the conviction—providing pictures to entice a minor.[69]

By contrast, the pictures in question were found on Buchanan's hard drive only a few days after the temporary internet files were discovered. Even though count five charges a different crime from the other counts, the crimes are similar, and Buchanan has not shown that his receipt of the sadistic and masochistic image was temporally distant from receipt of the four images on which counts one through four were based. The district court did not commit plain error by concluding that the sadomasochistic depiction of child pornography found on Buchanan's hard drive was part of the same course of conduct as the conviction for receipt of child pornography.

Buchanan also contends that he was entitled to a reduction for acceptance of responsibility. While the district court's findings under the sentencing guidelines are

---

[66]216 F.3d 459, 462 (5th Cir. 2000).

[67]*Id.* at 460-61.

[68]*Id.* at 461.

[69]*Id.* at 461-62.

generally reviewed for clear error, a determination whether a defendant is entitled to an adjustment for acceptance of responsibility is reviewed with even greater deference.[70] Buchanan initially pleaded guilty to possessing some of the same images later used in his trial. But this plea was withdrawn and Buchanan steadfastly claimed he did not knowingly receive or possess child pornography. The district court did not err in concluding that Buchanan's conduct was inconsistent with acceptance of responsibility.

Buchanan next challenges a conclusion in the presentencing report (PSR) that he engaged in chat room activity with 13- to 14-year-old girls. Buchanan further asserts that the probation officer failed to amend the PSR after the district court ordered him to do so. Although he admits that the information did not increase his sentence, he contends that it is prejudicial because agencies such as the Bureau of Prisons rely on the PSR.

Buchanan's contention that the PSR was inaccurate is without merit. It did not unequivocally state that Buchanan sought chat sessions or chatted with young girls. Nevertheless, the district court agreed to amend the paragraph at issue to reflect that Buchanan was only searching profiles of young girls.

To the extent that Buchanan complains that the PSR was not amended as ordered, actual amendment is not required. Rather, when a district court resolves disputed facts, the ruling is to be attached to any copy of the PSR provided to the Bureau of Prisons.[71] This

---

[70]*United States v. Brenes*, 250 F.3d 290, 292 (5th Cir. 2001).

[71]FED. R. CRIM. P. 32(i)(3)(C).

23

procedure was employed in this case. Thus, Buchanan has not identified any error that this court can correct.

Buchanan asserts that the district court was without authority to include a term of supervised release in addition to incarceration. Buchanan's argument is without merit because 18 U.S.C. § 3583 unambiguously states that, as part of a sentence, a district court may include a term of supervised release "after imprisonment."[72]

Buchanan next challenges the conditions of the supervised release imposed by the district court restricting internet use and contact with children. The district court has wide discretion for imposing terms and conditions, but it is limited by 18 U.S.C. § 3583, which requires that the conditions be related to the circumstances of the offense and defendant, adequate deterrence, protection of the public, and correctional treatment.[73] The conditions "cannot involve a greater deprivation of liberty than is reasonably necessary to achieve the latter three statutory goals."[74] Buchanan did not object to the supervised release conditions in district court, so we review for plain error.

Buchanan argues that the restriction against internet access is overly harsh and unnecessary. In *Paul*, we held that a prohibition on internet usage was reasonably related to the offense of possession of child pornography and the need to prevent recidivism and

---

[72]18 U.S.C. § 3583 (2000).

[73]*United States v. Paul*, 274 F.3d 155, 164-65 (5th Cir. 2001).

[74]*Id.* at 165.

24

protect the public.[75]  In light of *Paul*, the district court did not commit plain error.

Buchanan also argues that the restriction against unsupervised contact with children is overly restrictive on his liberty.  In *Paul*, this court upheld an even broader provision prohibiting contact with minors and requiring avoidance of places frequented by minors.[76] Considering that many of the photographs in this case involved children engaged in sexual conduct with adults and the general approval of such a restriction in *Paul*, the imposition of the condition is not plain error.

Buchanan contends that the imposition of mental, psychological, or psychiatric programs under the supervision of his probation officer are moot because he has already completed treatment that the probation department deemed appropriate.  Buchanan's argument is meritless because the PSR did not conclude that his prior counseling obviated the need for future counseling while on release.  Rather, the PSR states that he had undergone some prior treatment in 2002, and that due to the nature of the instant offense, "counseling and treatment is appropriate."

Buchanan also argues that the imposition of a DNA collection provision was unlawful and that the Bureau of Prisons has unlawfully taken a DNA sample from him.  This is a challenge to a prison condition that must be asserted through a separate civil action following exhaustion of administrative remedies.[77]  To the extent that Buchanan challenges DNA

---

[75]*Id.* at 169-70.

[76]*Id.* at 165-66.

[77]*United States v. Carmichael*, 343 F.3d 756, 760-61 (5th Cir. 2003).

collection as a condition of supervised release, the challenge is not ripe for review because it is speculative whether Buchanan will have to comply with the condition, particularly given his contention that the Bureau of Prisons has already taken a DNA sample.[78]

* * * * *

For the foregoing reasons, we VACATE Buchanan's convictions on counts one through four and REMAND for resentencing in accordance with this opinion. Buchanan's conviction and sentence with regard to count five are AFFIRMED.

---

[78]*See id.* at 761-62.

Benavides, Circuit Judge, concurring:

I join in the opinion of the Court and write separately to explain further why I believe the government did not satisfy its burden of proof as to the separate receipt of each of the four images in question. To be sure, internet crimes of this sort make for complicated prosecutions. Even familiar concepts like *actus reus* and *mens rea* can present new difficulties in this context, and analogies to our precedents in mail fraud or Mann Act cases will be imperfect at best.

There are many ways in which a defendant might receive four "visual depiction[s]" from the web. In the simplest example, he could visit a single page that contains four large images, all of which are automatically displayed on the screen and downloaded to his hard drive. In such a case, we could debate whether the defendant had committed four separate acts of receiving an individual image, or the single act of receiving one web page. Our holding in *Reedy* strongly suggests that such a defendant has "bundled" his conduct by website, rather than by individual image, and should face only a single conviction. In a more complicated example, however, a defendant might visit a web page that has thumbnails of various images, and then individually select some of those thumbnails to enlarge them on screen. In that case, would we focus on the receipt of the first page, or

27

the subsequent receipt of each image, or both?  And what if the defendant views the same image twice during one visit?  How many receipts is that?

These various scenarios—and one could easily imagine others—demonstrate that conceptualizing the "knowing receipt of any visual depiction" via the internet is much more complicated than it is in cases involving regular mail.  Even with complete information about what the defendant did and what he knew at the time he did it, categorizing the criminal behavior is challenging.  Our opinion in *Reedy* illustrates this difficulty well, and handles it with great skill.  In this case, however, we are not well situated to do the same.

As the majority correctly states, the government's burden is to prove that Buchanan took more than one action to receive the four images at issue.  Majority Op. at note 42 and accompanying text.  After combing through the record, we are left with insufficient proof of exactly what Buchanan did to receive the four images for which he was charged, and as a result we are unable to classify the defendant's conduct as one criminal act or four.  We cannot be sure, for example, if the defendant visited a single website that had four large images on it, or if the images were selected and received individually.[1]  This is not to say

---

[1]The closest thing to a description of the defendant's conduct with regard to the individual images comes from a question posed by defense counsel to one of the government's witnesses.  The exchange

that the former is necessarily a single criminal act, nor that the latter is necessarily more than one.  It falls to future panels to decide these issues when they are adequately presented by the record.  It is to say, however, that if the "'unit of prosecution' for a crime is the *actus reus*, the physical conduct of the defendant," *United States v. Reedy*, 304 F.3d 358, 365 (5th Cir. 2002), as it surely is, then we need to know more about the

---

went as follows:

> Q.  So it's fair to say that whoever is looking at the computer—and, again, we're assuming it's Mike.  You didn't actually see him at the computer, is that right?
> A.  That's correct.
> Q.  Whoever is at the computer is obviously clicking on images and then clicking on other images, is that correct?
> A. True.
> Q. Fair statement?
> A. Fair statement.

This provides us with some idea about how the defendant was selecting and receiving images, as do some of the exhibits introduced at trial, such as the list of downloaded files and their time stamps.  However, this evidence hardly constitutes adequate proof that the defendant received the four images in question by way of four separate, knowledgeable actions.  There were, after all, many legal and illegal images found on the defendant's hard drive, and defense counsel's questions were not specific as to the four images at issue.  It is entirely possible that those four images were received as a result of a single knowledgeable action on the part of the defendant rather than four.  As for the time stamps, they are of little value.  The government's own computer expert testified—and it is uncontroverted—that the time stamps do not necessarily indicate when the pictures were received.  Her exact words were, "you really shouldn't hang your hat on file dates and times."  Unfortunately for the government, they have done just that, because the record is devoid of any other indication of when or how Buchanan acquired the four images in question. Without more proof as to the specific images, I do not see how the four separate convictions can stand.

29

conduct of this particular defendant before we can sustain his four convictions.

We can be sure of the fact that Buchanan violated 18 U.S.C. § 2252. What we do not know is whether he violated it once, twice, or four times. Accordingly, I agree with the majority that it would be multiplicitous to sustain four separate convictions in this case.