# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40635

United States Court of Appeals
Fifth Circuit

**FILED**
June 5, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

JERMAINE WEBSTER HARRIS,

      Defendant–Appellant.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

Before OWEN, Chief Judge, and SOUTHWICK and HIGGINSON, Circuit Judges.

PRISCILLA R. OWEN, Chief Judge:

After a nine-day jury trial, Jermaine Webster Harris was found guilty of seventeen criminal counts, including two counts of carjacking and two counts of possessing a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c). The district court sentenced Harris to 744 months of imprisonment, ordered $878,533.29 in restitution, and imposed five years of supervised release that included four "special conditions" pertaining to restitution and Harris's other financial obligations under the judgment. Harris appeals his convictions for carjacking and possession of a firearm,

No. 18-40635

contending the evidence is insufficient, and challenges the "special conditions" imposed as part of his supervised release.  We affirm.

**I**

In early 2016, Jermaine Webster Harris and two codefendants were indicted in the Eastern District of Texas.  Approximately eight months later, a superseding indictment named two additional codefendants.  The superseding indictment charged Harris with seventeen counts.  Relevant here, Harris was charged with two counts of carjacking and two counts of using, carrying, and possessing a firearm in relation to and in furtherance of a crime of violence under 18 U.S.C. § 924(c).  Harris pleaded not guilty, and the case proceeded to trial.  The jury convicted Harris on all counts.  Harris filed a Motion for a Judgment of Acquittal, which the district court denied.

The United States Probation Office filed an initial Presentence Investigation Report (PSR), to which Harris objected.  The probation officer responded to Harris's objections in an addendum, but no change was made to the calculation of his guidelines range.  The PSR was amended a second time, but the revisions did not affect the suggested guidelines range.  The PSR contained conditions requiring that Harris: (1) "pay any financial penalty that is imposed by the judgment"; (2) "provide the probation officer with access to any requested financial information for purposes of monitoring restitution payments and employment"; (3) "not incur new credit charges or open additional lines of credit without the approval of the probation officer unless payment of any financial obligation ordered by the Court has been paid in full"; and (4) "not participate in any form of gambling unless payment of any financial obligation order by the Court has been paid in full."

The district court imposed a total term of imprisonment of 744 months and ordered Harris to pay restitution.  The court also imposed a 5-year term of supervised release and instructed that "the defendant must comply with the

No. 18-40635

mandatory and special conditions and instructions that have been set forth in the defendant's presentence report." Then, in its written judgment, the district court set forth four "special conditions" of supervision that tracked the conditions recommended in the PSR. Harris appeals.

## II

Harris contends that there was insufficient evidence to support his conviction under 18 U.S.C. § 2119 on two counts of carjacking. Specifically, he argues that there was insufficient evidence of *mens rea.*

To convict Harris of carjacking under § 2119, "the [G]overnment must prove that: 'the defendant, (1) while possessing a firearm, (2) took from the person or presence of another (3) by force and violence or intimidation (4) a motor vehicle which had moved in interstate or foreign commerce.'"[1] "The defendants' motive in taking the car is irrelevant."[2] The Supreme Court has explained that the intent element "of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car (or, alternatively, if unnecessary to steal the car)."[3]

When a defendant moves for acquittal in the district court, this court reviews challenges to the sufficiency of the evidence de novo.[4] "Appellate review is highly deferential to the jury's verdict,"[5] so the "jury's verdict will be affirmed unless no rational jury, viewing the evidence in the light most

---

[1] *United States v. Harris*, 25 F.3d 1275, 1279 (5th Cir. 1994) (quoting *United States v. Singleton*, 16 F.3d 1419, 1422 (5th Cir. 1994)).

[2] *Id.*

[3] *Holloway v. United States*, 526 U.S. 1, 12 (1999).

[4] *United States v. Danhach*, 815 F.3d 228, 235 (5th Cir. 2016) (citing *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012)); *United States v. Hale*, 685 F.3d 522, 543 (5th Cir. 2012) (citing *United States v. Clayton*, 506 F.3d 405, 412 (5th Cir. 2007)).

[5] *United States v. Ganji*, 880 F.3d 760, 767 (5th Cir. 2018).

No. 18-40635

favorable to the prosecution, could have found the essential elements of the offense to be satisfied beyond a reasonable doubt."[6]   "In assessing the sufficiency of the evidence, we do not evaluate the weight of the evidence or the credibility of the witnesses."[7]   Juries are "free to choose among all reasonable constructions of the evidence,"[8] and "[d]irect and circumstantial evidence are given equal weight."[9]   In this case, the Government presented sufficient evidence to sustain Harris's carjacking convictions.

## A

Count Four of the superseding indictment charged Harris and his codefendants with a carjacking on December 9, 2015.  At trial, the Government offered testimony from two of Harris's co-conspirators, Alton Latray Marshall and Derek Polk.  They provided the following testimony: Marshall, Harris, and Polk spent two days surveilling the home of a local radio Disc Jockey, Russell Martin.  Marshall testified that prior to a home invasion, Harris typically researched the victims, and in this case he intended to steal Martin's Dodge Challenger.  On the day that they stole the vehicle, a friend of Harris's drove Marshall, Harris, and Polk to Martin's house.  When they arrived at the house, Marshall carried a baseball bat, and Harris and Polk carried firearms.  Harris and Polk intended to point the guns at Martin "just to scare him," but Harris instructed Marshall to hit Martin with the bat if he did not listen to their instructions.  When Martin arrived home, Harris and Polk pointed their guns at him.  They checked Martin for weapons, and then ordered him to unlock the

---

[6] *United States v. Bowen*, 818 F.3d 179, 186 (5th Cir. 2016) (quoting *United States v. Roetcisoender*, 792 F.3d 547, 550 (5th Cir. 2015)).

[7] *United States v. Girod*, 646 F.3d 304, 313 (5th Cir. 2011) (citing *United States v. Myers*, 104 F.3d 76, 78-79 (5th Cir. 1997)).

[8] *United States v. Chaney*, 964 F.2d 437, 448 (5th Cir. 1992) (quoting *United States v. Berisha*, 925 F.2d 791, 795 (5th Cir. 1991)).

[9] *United States v. Dien Duc Huynh*, 246 F.3d 734, 742 (5th Cir. 2001) (quoting *United States v. Mendoza*, 226 F.3d 340, 343 (5th Cir. 2000)).

door to his house and disarm his alarm system. Marshall checked the house for valuables while Polk and Harris followed Martin to a safe in Martin's office, which was empty when opened. Martin also showed them a safe in the master bedroom closet but said he was unable to open it because it was installed at the time he purchased the home, and he did not know the combination. They then took Martin into the kitchen area where Harris duct taped him to the chair and then "rampaged the whole house." Harris "knocked over a lot of stuff" including plants and furniture. While Martin was in the chair, Polk kept a gun pointed at him. Polk tried to reassure Martin that "everything was going to be okay and that he wasn't going to be hurt," but Harris got "really . . . mad," pointed the gun at the back of Martin's head, and accused him of lying about his belongings. At one point, Polk told Martin, "[y]ou are lucky I am here. If I was not here, they would probably shoot you." While the men were ransacking the house, Martin offered other belongings, as well as money. After Martin had been tied to the chair for about ten minutes, Harris took the car keys from the counter, the intruders got into the Challenger, and Harris drove it away.

Viewing the evidence in the light most favorable to the Government, a rational jury could have found that Harris had the intent to seriously injure or kill Martin *if necessary* at the moment that he took the Dodge Challenger.[10]

**B**

Count Eight charged Harris with a carjacking on July 25, 2015. At trial, the government presented the following testimony from Harris's co-conspirators, Polk, Marshall, and Kenneth Demarcus Cash: approximately eleven days before they stole the vehicle, Harris told Polk that he needed to get his own car by the end of the week. On July 24, Polk, Cash, Harris, and another man surveilled the house of their victims, the Davenports. During their

---

[10] *See Holloway v. United States*, 526 U.S. 1, 12 (1999).

surveillance, they discussed their intention to steal the Davenports' Audi during the home invasion. The next day, Polk, Cash, and Harris returned to the home carrying automatic weapons. Harris broke a window, entered the home, and opened the garage so Polk and Cash could also enter. Mr. Davenport, who was 77, was watching television, and the men alternated keeping an eye on him. After finding cash and a locked safe, the men approached Davenport and told him to open the safe. All three men pointed firearms at Davenport. Davenport was slow to open the safe, so Harris threatened him, saying: "if I put one in you, I bet you will open it then." Shortly thereafter Davenport was able to open the safe, and he was ordered to "lie face down on the floor" while Harris and Cash filled two duffle bags with jewelry, cash, and guns. The men then walked Davenport to the other end of the house, told him to go into the bathroom, count to 100, and not call the police. Harris and Cash slashed the Davenports' phone cords, and Cash grabbed the Audi keys off of the counter. The vehicle was involved in a crash as they began to drive away. They then ran away on foot.

Harris argues that "the taking of the car is too attenuated from any violent acts perpetrated against Dr. Davenport." However, we only need to consider whether a rational jury could infer that Harris "possessed the intent to seriously harm or kill [Mr. Davenport] if necessary to steal the car,"[11] not whether any violent acts were perpetrated against the victim at the time that the vehicle was taken. There was sufficient evidence for a rational jury to make such an inference.

---

[11] *Id.*

No. 18-40635

## C

Harris relies on *United States v. Harris*,[12] in which this court held that there was insufficient evidence to support the defendant's carjacking conviction.[13]  However, the facts of that case are distinguishable.  In *Harris*, the defendant was hitchhiking and got into a stranger's car.[14]  The two men drove for a period of time, and then parked in a secluded area.[15]  According to the defendant's account, the driver pressured the defendant into engaging in sexual conduct, and when the defendant walked away the driver pursued him.[16]  At that point, the defendant shot him and covered the body.[17]  Then, he found the man's car keys and drove home.[18]  In that case, the record did not contain any evidence regarding how the two men got into the car together or arrived at the secluded area where the body was later found.  "Indeed, the record lack[ed] any evidence relating to the moment [the defendant] demanded or took control of the vehicle."[19]  There was nothing from which the jury could infer the defendant's intent at the moment that he took the car, much less his intent to kill or harm.[20]

In this case, Harris's co-conspirators testified as to the entire series of events during which Harris obtained possession of the vehicles, including the moments when he and his co-conspirators took control of the vehicles.  Based on the trial testimony, a reasonable jury could conclude that, in both instances, at the moment Harris and his co-conspirators were taking each vehicle, Harris

---

[12] 420 F.3d 467 (5th Cir. 2005).
[13] *Id.* at 478.
[14] *Id.* at 469.
[15] *Id.*
[16] *Id.* at 469-70.
[17] *Id.* at 470.
[18] *Id.*
[19] *Id.*
[20] *See id.* at 471-74.

7

would have seriously harmed or killed the owner if necessary to take control of the vehicle.  Such an inference is supported by evidence showing that Harris was in possession of a firearm when he took the vehicles, he pointed a firearm at each victim, he encouraged his co-conspirator to use physical violence against a victim if the victim did not comply, and Harris himself made threatening comments towards each victim.  Harris entered each home with the intention of taking a vehicle, and the evidence supports the inference that he would have done whatever necessary to accomplish his goal.

### III

Harris argues that if we reverse his conviction as to either carjacking count for insufficient evidence, then the corresponding 18 U.S.C. § 924(c) counts (Counts Five and Nine) must also fall.  Harris does not challenge any other aspect of the § 924(c) counts.  Therefore, because there was sufficient evidence for the jury to convict Harris on both underlying carjacking counts, Harris's convictions under Counts Five and Nine stand.

### IV

Lastly, Harris contends his written judgment should be modified because it includes four "special conditions" that Harris contends were not orally pronounced during sentencing.  We disagree.

### A

We first consider whether each of the conditions Harris challenges are ripe for review.[21]  "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review."[22]  "A claim is not ripe for review if 'it rests upon contingent future events that may not occur as anticipated, or indeed

---

[21] *United States v. Carmichael*, 343 F.3d 756, 761 (5th Cir. 2003).
[22] *Id.* (quoting *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000)).

may not occur at all."[23]  The inquiry "focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention."[24]  A condition of supervised release is ripe for review if it is "patently mandatory—i.e., [its] imposition is 'not contingent on future events.'"[25]  On the other hand, "[a]n appeal . . . is not ripe if it is 'a matter of conjecture' whether the requirements of the condition will take effect."[26]

Each of the four conditions relate to the payment of restitution and monetary assessments.  The district court ordered Harris to pay $880,233.29 immediately, during the period of his confinement.  Accordingly, so long as Harris complies with the district court's order and pays the assessments in full during his term of confinement, the conditions of supervised release pertaining to payment would not be applicable.  In that sense, at least theoretically, the conditions of supervised release are contingent upon "future events that may not occur as anticipated."[27]  However, based on the record in this case, it is not anticipated that that Harris will pay the full amount prior to his release from imprisonment.  The district court found that Harris does not have the ability to pay interest on the restitution owed and waived interest on restitution.  It is sufficiently likely that Harris will remain obligated to make payments toward his financial obligations when his supervised release begins, and the four conditions of supervised release will apply to enforce compliance with the financial obligations outlined in the judgment.  Accordingly, the conditions are ripe for appellate review.

---

[23] *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

[24] *United States v. Magana*, 837 F.3d 457, 459 (5th Cir. 2016) (quoting *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010)).

[25] *Id.* (quoting *Carmichael*, 343 F.3d at 761).

[26] *Id.* (quoting *Carmichael*, 343 F.3d at 761-62).

[27] *See Carmichael*, 343 F.3d at 761.

No. 18-40635

## B

Turning to the merits of Harris's arguments, we conclude Harris is not entitled to relief. Harris's contentions are squarely governed by our recent en banc opinion in *United States v. Diggles*.[28] There, we held that a district court need orally pronounce only those supervised release conditions that, pursuant to 18 U.S.C. § 3583(d), are within its discretion to impose, and that no similar requirement exists for those conditions a district court is required to impose pursuant to the statute.[29] Moreover, our opinion "established that the district court's 'oral adoption' at sentencing of a document listing proposed supervision conditions satisfies the oral-pronouncement requirement and provides notice to the defendant, such that a failure to object will result in plain-error review on appeal."[30] Here, Harris did not object when the district court orally adopted the conditions outlined in the PSR, which included the four conditions Harris now challenges. Consequently, plain-error review applies. Because the district court's oral adoption of the conditions in the PSR satisfied the court's pronouncement obligations to the extent it was required to do so, Harris does "not clear even the first of the four plain-error hurdles for there was no error at all."[31] Harris's requests for relief are accordingly denied.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment.

---

[28] 957 F.3d 551 (5th Cir. 2020) (en banc).

[29] *See id.* at 559.

[30] *United States v. Gomez*, ___F.3d ___, 2020 WL 2536615, at \*4 (5th Cir. 2020) (citing *Diggles*, 957 F.3d at 559-60).

[31] *Diggles*, 957 F.3d at 560; *see United States v. Huor*, 852 F.3d 392, 398 (5th Cir. 2017) (noting that plain-error review requires the appellant to show "(1) an error (2) that is clear or obvious, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings" (quoting *United States v. Mendoza–Velasquez*, 847 F.3d 209, 212 (5th Cir. 2017))).