# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 9, 2021

Lyle W. Cayce
Clerk

No. 20-10363

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

SOLOMON EMAKOJI,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
No. 4:20-CR-18-1

Before JONES, SMITH, and ELROD, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

Solomon Emakoji entered a plea agreement. But when it came time to plead guilty, he requested two continuances, citing fears about traveling to the courthouse during the COVID-19 pandemic ("COVID"). The district court declined and ordered Emakoji to obtain housing in the Northern District of Texas. On appeal, we affirm in part and dismiss in part for want of jurisdiction.

I.

Emakoji participated in an alleged "romance scheme." The perpetrators used bogus social media profiles to "lure lonely women and men into

romantic relationships" and "request[] money from the victims under materially false pretenses." Emakoji helped move some of that money from the United States to Nigeria.[1] The government thus indicted him for engaging in a monetary transaction in property derived from a specified unlawful activity in violation of 18 U.S.C. §§ 1957 and 2.

The government arrested Emakoji in Alabama, where a magistrate judge released him on the conditions that he "maintain [his] current residence" and "appear at all proceedings as required." Because the alleged crime occurred in the Northern District of Texas, the district court in Fort Worth adopted those release conditions and set Emakoji's case for a jury trial. After the court granted an initial continuance, the government and Emakoji reached a plea agreement, and the court set rearraignment—which is, as Emakoji puts it, "for all intents-and-purposes, a guilty plea hearing"— for April 6, 2020.

Meanwhile, COVID arrived in the United States. In response, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which says, in relevant part, that a "plea . . . may be conducted by video teleconference" if "the chief judge of a district court . . . specifically finds . . . that felony pleas . . . cannot be conducted in person without seriously jeopardizing public health and safety." CARES Act, Pub. L. No. 116-136, § 15002(b)(2), 134 Stat 281, 528–29 (2020). Accordingly, the Chief Judge of the Northern District of Texas concluded that felony pleas "cannot be conducted in person without seriously jeopardizing public health and safety" and thereby authorized district judges to conduct pleas via video. Special Order No. 13-9, at 2. Regardless, in a series of orders, the Chief Judge

---

[1] As the district court put it, Emakoji "receiv[ed] funds sent by victims to his bank account," "withdr[ew] those funds," and sent them "to other scheme participants domestically and ultimately in Nigeria."

noted that each order was not "intended to prevent a district judge from using the judge's discretion to conduct an in-person proceeding in an individual case."[2]

In Emakoji's case, the district court scheduled an in-person rearraignment and maintained that format after issuance of the Chief Judge's orders. Emakoji thus brought two unopposed motions to continue.

First, on March 31, Emakoji asked to continue his rearraignment for at least forty-five days, because his lawyers lived in Georgia and feared that traveling for the rearraignment would expose them and others to COVID. The court excused those lawyers but denied the request to continue the rearraignment, concluding that local counsel would represent Emakoji.

Second, on April 2, Emakoji filed another motion to continue, because he feared that traveling for the rearraignment would expose him and others to COVID. The government did not oppose that continuance "to the extent that the defendant consents to conduct the re-arraignment hearing via video-teleconference . . . ." Emakoji thus amended his motion to note that he "consents to video teleconferencing."

The district court denied that motion and reached two relevant conclusions. First, given the "unknown nature of the length" of the pandemic, further delaying the rearraignment "would damage confidence in, and be contrary to, the interests of justice." And because Emakoji's offense— "facilitat[ing] financial fraud"—is "serious," the court found that the public has "a vested interest in seeing this process completed without additional

---

[2] Special Order No. 13-9, at 2; *see also* Amended Special Order No. 13-9, at 2; Second Amended Special Order No. 13-9, at 2; Third Amended Special Order No. 13-9, at 2.

delay."[3]

Second, the court *sua sponte* ordered Emakoji "to obtain housing within the Northern District of Texas within thirty days." Although the court had previously allowed Emakoji to reside in Alabama, "provided he agrees to appear at all proceedings," the court concluded that his "reluctance to appear calls into question his ability to comply with these conditions." That housing requirement "alleviate[d] the concerns [Emakoji] has about making himself available for hearings" and "ensure[d] the Court that he will comply with orders to appear." Emakoji appeals.

## II.

Emakoji objects to the district court's imposition of an in-person rearraignment. The government contends that we lack jurisdiction to hear that claim under the collateral order doctrine and that the claim is moot. We lack jurisdiction and thus do not address mootness.

Generally, we have jurisdiction to review "final decisions." 28 U.S.C. § 1291. In criminal cases, that means we often cannot review any claims "until conviction and imposition of sentence." *Flanagan*, 465 U.S. at 263. The collateral order doctrine, however, allows an appeal before final judgment where the district court's order (1) "conclusively determine[s] the disputed question," (2) "resolve[s] an important issue completely separate from the merits of the action," and (3) is "effectively unreviewable on appeal from a final judgment." *Id.* at 265 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). We lack jurisdiction over Emakoji's in-person rearraignment claim, because (1) we narrowly apply the collateral order doc-

---

[3] And the Supreme Court appears to agree. *See Flanagan v. United States*, 465 U.S. 259, 265 (1984) (concluding that "the community has a strong collective psychological and moral interest in swiftly bringing the person responsible to justice").

trine in the criminal context, and (2) that claim flunks the doctrine's test.

## A.

The collateral order doctrine constitutes a "narrow exception" to the final judgment rule. *Id.* (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)). We apply that already-narrow exception "with the utmost strictness" in criminal cases,[4] generally "limit[ing] it to the denial of only three types of motions: (1) motions to reduce bail; (2) motions to dismiss on double jeopardy grounds, and (3) motions to dismiss under the Speech or Debate Clause."[5] An order to appear at an in-person rearraignment does not fall within any of those categories. An order that "merely . . . directs the United States Marshal to take steps to ensure [a defendant's] presence at pretrial proceedings . . . does not fall within" the collateral order doctrine. *United States v. Silvas*, No. 93-8638, 1993 WL 455638, at *2 (5th Cir. 1993) (per curiam). We thus "decline to find a new category today." *Valencia*, 940 F.3d at 183.

## B.

We sometimes apply the collateral order doctrine in criminal cases outside those three categories.[6] Even assuming that that is the correct

---

[4] *United States v. Edwards*, 206 F.3d 461, 462 (5th Cir. 2000) (per curiam) (quoting *In re Grand Jury Subpoena*, 190 F.3d 375, 381 (5th Cir. 1999)); *see also Flanagan*, 465 U.S. at 264 ("The Court has also long held that [the final judgment rule] is at its strongest in the field of criminal law." (quoting *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982)); *Grand Jury Subpoena*, 190 F.3d at 381 ("The collateral order doctrine is rarely applied in criminal cases.").

[5] *Edwards*, 206 F.3d at 462; *see also United States v. Valencia*, 940 F.3d 181, 183 (5th Cir. 2019) ("The Supreme Court has '. . . found denials of only three types of motions to be immediately appealable . . . .' We decline to find a new category today." (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989))).

[6] *See, e.g.*, *United States v. McKown*, 930 F.3d 721, 725 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2518 (2020); *United States v. Williams*, 400 F.3d 277, 280 (5th Cir. 2005) (per

No. 20-10363

approach, Emakoji's objection to the in-person rearraignment does not qualify, because the order does not "resolve an important issue completely separate from the merits of the action." *Id.* (cleaned up). Specifically, Emakoji's claim runs into trouble on the "importance" factor. In narrowing the types of appealable collateral orders, the Supreme Court has "rais[ed] the bar on what types of interests are 'important enough' to justify collateral order appeals."[7] And in the criminal context, orders that are important enough usually "involve[] an asserted right." *United States v. Bird*, 709 F.2d 388, 391 (5th Cir. 1983) (cleaned up).

Emakoji does not propound that he has a right to an in-person rearraignment. Instead, he cites several of the Chief Judge's special orders. Even supposing that such orders could create a right to a video rearraignment, they have not done so. Instead, they repeatedly note that "[n]othing in this Order is intended to prevent a judge from using the judge's discretion to conduct an in-person proceeding in an individual case." Special Order No. 13-9, at 2. Emakoji thus fails to assert a right that could establish the importance of the instant appeal.[8]

Emakoji also suggests that his in-person rearraignment claim is important, because it "directly bears on the substantial public health and welfare interests related to [COVID]." He cites a line of cases suggesting that

---

curiam).

[7] *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 117 (2009) (Thomas, J., concurring in part and concurring in judgment) (quoting *Will v. Hallock*, 546 U.S. 345, 353 (2006)); *see also Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878 (1994) (rejecting the notion that "'importance' is itself unimportant").

[8] Emakoji properly identifies constitutional rights that he claims are at stake in his claim about the housing requirement. But we have already concluded that we have jurisdiction to review that claim.

No. 20-10363

societal interests can count as important.[9]  But he does not cite any cases applying the societal-interest rationale in the criminal context.  And he does not explain how we can do so now without "find[ing] a new category" of criminal cases that are appealable under the collateral order doctrine.  *Valencia*, 940 F.3d at 183.  Moreover, where we have expanded our criminal-law collateral-order precedent, we usually have done so after identifying a constitutional[10] or statutory[11] right at issue—not after designating some societal value.  We thus decline to extend the collateral order doctrine's reach in the criminal context.

In sum, Emakoji's claim regarding the in-person rearraignment is not an immediately appealable collateral order.  We thus dismiss that portion of the appeal and do not address its merits.  We do, however, address the merits of the claim questioning the housing requirement.

### III.

Emakoji objects to the district court's imposition of a housing requirement.  By statute, a defendant may "appeal from a release or detention

---

[9] *See, e.g.*, *Mohawk*, 558 U.S. at 107 ("[T]he decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order." (cleaned up)); *Will*, 546 U.S. at 352–53.

[10] *See, e.g.*, *McKown*, 930 F.3d at 725 ("[W]hether a defendant was denied due process is an important question . . . ."); *United States v. Brown*, 218 F.3d 415, 420 (5th Cir. 2000) ("[T]he question at issue—weighing the competing interests of a trial participant's First Amendment right to discuss his criminal trial freely against the district court's obligation to ensure a fair trial and dispense justice in an orderly manner—is unquestionably important.").

[11] *See, e.g.*, *United States v. Bilbo*, 19 F.3d 912, 914–15 (5th Cir. 1994) (describing "rights granted to juveniles by 18 U.S.C. § 5038 . . . that would be 'irretrievably lost unless the juvenile is permitted to appeal the district court's order . . . .'" (quoting *United States v. Gerald N.*, 900 F.2d 189, 190 (9th Cir. 1990) (per curiam))).

No. 20-10363

order," and such an appeal "shall be determined promptly."[12] We thus have jurisdiction to review the imposition of a housing requirement under 18 U.S.C. § 3145(c).[13]

The district court ordered Emakoji "to obtain housing within the Northern District of Texas within thirty days." Emakoji contends that the order violates his (A) Eighth Amendment right to be free from excessive bail and (B) Fifth Amendment due process right. We disagree.

A.

"Excessive bail shall not be required." U.S. CONST. amend. VIII. And the Supreme Court, in *dicta*, has extended that limitation to conditions of release.[14] Neither party cites any precedent explaining the standard that we should use to evaluate an excessive-release-condition claim. Emakoji suggests that we should ask whether a condition is "necessary to serve the purpose of ensuring appearance in court . . . ."[15] That is more or less consistent with the standard we use to evaluate whether bail is excessive: Specifically, "bail set at a figure higher than an amount reasonably calculated to

---

[12] 18 U.S.C. § 3145(c); *cf. Stack v. Boyle*, 342 U.S. 1, 6 (1951) ("[T]he order denying the motion to reduce bail is appealable as a 'final decision' . . . under [28 U.S.C. § 1291].").

[13] The government asks for plain-error review on that issue. Emakoji says we should apply abuse of discretion. Because we find no error, we do not decide which standard is appropriate.

[14] *United States v. Salerno*, 481 U.S. 739, 754 (1987) ("The only arguable substantive limitation of the Bail Clause is that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil."). Because the Government doesn't object to the notion that release conditions constitute "bail," we assume, without deciding, that release conditions could violate the Bail Clause.

[15] He also says that we can examine whether a condition of release is "necessary to . . . protect[] the welfare of the community against future danger." Because neither the district court nor the government suggests that Emakoji is a danger to the community, we need not address that theory.

ensure the defendant's presence at trial is 'excessive' under the Eighth Amendment." *Broussard v. Par. of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003) (cleaned up). We thus assume, *arguendo*, that that is the appropriate standard. Applying it, we must determine whether the housing requirement was both (1) calculated to assure Emakoji's presence and (2) reasonable.

First, the district court employed the housing requirement to "ensure the Court that [Emakoji] will comply with orders to appear." The court thus imposed the additional condition of release to ensure Emakoji's presence.[16]

Second, Emakoji contends that the housing requirement is "unreasonable" because "there is no rational reason to believe that he would not continue to" be "completely compliant while under pre-trial supervision . . . ." We disagree. As part of his conditions of release, Emakoji agreed to "appear at *all* proceedings *as required* . . . ." (Emphases added.) But, after agreeing to plead guilty, he requested two continuances within the span of three days, both based on fears about COVID. He asserted his fear of "traveling between at least three states, and through so many different counties . . . ." He averred that the United States is "affirmatively trying to avoid" such travel "at all costs." Emakoji's reluctance to appear in-person gave the court reason to believe that he might not comply with his release conditions by "appear[ing] at all proceedings as required . . . ."

---

[16] Emakoji claims that the district court erroneously added the housing requirement without finding that he is a risk of flight or a danger to the community. He does not explain why such findings would be relevant to an excessive-release-condition claim. In any event, the Bail Reform Act instructs courts to consider the possibility that a "person may flee or pose a danger to any other person or the community" in the context of *temporary detention*, 18 U.S.C. § 3142(d)(2)—not in the context of *release conditions*. For the latter, the proper inquiry is whether they "reasonably assure the appearance of the person as required . . . ." § 3142(c). Because the district court properly considered the risk that Emakoji would not appear, it conducted the proper analysis under the Act.

No. 20-10363

Emakoji counters that he is "*more than willing to attend* the re-arraignment proceeding . . . via video . . . ." Thus, the argument goes, Emakoji did not express an unwillingness to appear, and the court unreasonably added a housing requirement to ensure his appearance. We reject that contention.

A defendant's desire to plead guilty via video does not hamstring a district court's discretion to require an in-person appearance. The Chief Judge's special order declined to fetter district courts' discretion in that fashion.[17] The decision whether to hold in-person proceedings during the pandemic "fall[s] within the discretion of the district court . . . ."[18] Thus, where a defendant expresses his reluctance to appear at such an in-person hearing, a district court can reasonably amend release conditions to ensure his appearance.

## B.

Emakoji contends that the housing requirement violates procedural due process.[19] To comply with due process, the argument goes, the district

---

[17] *See* Special Order No. 13-9, at 2 ("Nothing in this Order is intended to prevent a judge from using the judge's discretion to conduct an in-person proceeding in an individual case.").

[18] *In re Tanner*, No. 20-10510, 2020 U.S. App. LEXIS 32812, at *3 (5th Cir. May 29, 2020) (per curiam) (order denying petition for writ of mandamus); *see also United States v. Auzenne*, No. 2:19-CR-53-KS-MTP, 2020 WL 6065556, at *12 (S.D. Miss. Oct. 14, 2020) ("[W]hether and how to proceed to trial [during the pandemic] are questions firmly within a trial judge's discretion.").

[19] Emakoji says, in passing, that the housing requirement implicates his "right to remove from one place to another according to inclination," which is an "attribute of personal liberty," under *Williams v. Fears*, 179 U.S. 270, 274 (1900). That contention appears to be merely a premise in his procedural due process claim—likely an identification of a liberty interest—and not a standalone argument. *See, e.g.*, *United States v. Arzberger*, 592 F. Supp. 2d 590, 600 (S.D.N.Y. 2008) (citing the right to travel as a constitutionally protected liberty interest, on the first prong of a due-process inquiry). Even assuming that

court needed to (1) "conduct[] a hearing" or (2) "find[] a violation of exist-ing release conditions . . . ." Both claims fail.

First, Emakoji asserts that before amending the housing requirement, the district court needed to "conduct[] a hearing." Although the Bail Reform Act requires a hearing before a court detains a defendant, 18 U.S.C. § 3142(e)(1), the Act allows a court "*at any time*" to "impose additional or different conditions of release." § 3142(c)(3) (emphasis added). Emakoji cites no precedent suggesting that that provision of the Act is unconstitutional.

Second, Emakoji suggests that the district court could not modify his conditions of release without "finding a violation of existing release condi-tions . . . ." But that requirement is absent from the Act. *See, e.g.*, § 3142(c)(3). Emakoji's sole citation as to required findings is inapposite: He cites *United States v. Green*, 793 F. App'x 223, 226 (5th Cir. 2019) (per curiam) (quoting *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992)), where we held that a court failed to make an "independent determination of

---

Emakoji asserted a violation of a right to travel as an independent argument, we also con-clude that such a claim would fail on the merits.

In the context of criminal prosecutions, the Supreme Court has rejected substan-tive due process claims about deprivations of liberty interests, noting instead "the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions." *Albright v. Oliver*, 510 U.S. 266, 274 (1994). In her concurring opinion in *Albright*, Justice Ginsburg "suggest[ed] that various constraints such as travel restrictions and required attendance at pretrial hearings might constitute a seizure and thereby extend the [Fourth] Amendment's reach toward trial." *Castellano v. Fragozo*, 352 F.3d 939, 959 (5th Cir. 2003) (en banc); *see also Albright*, 510 U.S. at 278 (Ginsburg, J., concurring). Regardless, we have noted that Justice Ginsburg's opinion "did not attract support in *Albright*," and our circuit has thus "adhere[d] to the view that the umbrella of the Fourth Amendment, broad and powerful as it is, casts its protection solely over the pretrial events of a prosecution." *Castellano*, 352 F.3d at 959. Thus, to the extent that Emakoji raises substantive due process or Fourth Amendment arguments about his right to travel, both fail.

the proper pretrial detention or conditions for release," because it gave only "a two-line electronic order, without providing any discussion as to how the condition was proper under the statute." But *Green* was about a court's failure to make required findings under § 3142(g); it never mentioned "due process." *Id.* at 225–26. Emakoji has thus failed to explain why, to confer due process, a court must "find[] a violation of existing release conditions."

At bottom, the main problem with Emakoji's due process claims is that they consist only of conclusory statements.[20] For instance, he hasn't cited any precedent that would help determine what process is due.[21] And we have rejected due process arguments where a defendant fails to "cite[] any persuasive authority to support his conclusory argument that the district court . . . violated his right to due process." *United States v. Rea-Herrera*,

---

[20] Emakoji asserts that "it would be unreasonable and unfair to require [him] to provide right-on-the-point authority" for some propositions, given the novel situation that COVID presents. Our conclusion is not based on Emakoji's failure to cite precedent related to COVID but on the failure to cite precedent suggesting that modification of release conditions, absent a hearing, violates due process.

[21] For instance, "[i]n assessing whether . . . procedures [are] constitutionally sufficient, we evaluate three factors: (1) private interest, (2) risk of error, and (3) governmental interest." *United States v. Jones*, 664 F.3d 966, 974 (5th Cir. 2011). Emakoji doesn't make any assertions about those factors. Even if he had, that argument would still fail.

We acknowledge that Emakoji's interests are implicated in the housing requirement. He may incur expenses in procuring housing, and he may need to travel to Texas. Second, we have no evidence that the risk of error is great. A housing requirement is appropriate where it is imposed to ensure appearance in court. 18 U.S.C. § 3142(c)(1)(B)(iv). Emakoji has not provided any evidence or argument that courts would erroneously impose housing conditions for improper reasons that would be stymied with a hearing. Third, the government "has a compelling interest in assuring the presence at trial of persons charged with crime." *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc). Moreover, "[t]he Fifth Amendment does not require a trial-type hearing in every conceivable case of government impairment of private interest." *Cafeteria & Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*, 367 U.S. 886, 894 (1961). Balancing those factors, we conclude that the court's imposition of the housing requirement without a new hearing did not violate due process.

No. 07-20423, 2009 WL 122562, at *2 (5th Cir. Jan. 20, 2009) (per curiam). We thus reject Emakoji's due process claim, because his "conclusory constitutional arguments are unpersuasive." *United States v. Grays*, 773 F. App'x 206, 208 (5th Cir. 2019) (per curiam).

C.

Besides his constitutional claims, Emakoji makes two other assertions about the housing requirement. First, he pauses for a page to impugn the district judge's motives, claiming that his actions were "vindictive[]," "pseudo-retaliatory," and "punitive . . . ." But Emakoji makes no legal argument on that point. The dearth of caselaw amidst his lambasting of the court is telling.

Second, Emakoji claims that, because he has not yet pleaded guilty, it was premature for the court to state that he participated "in a fraudulent scheme . . . . by receiving funds sent by victims to his bank account, and then withdrawing those funds to send them to other scheme participants domestically and ultimately in Nigeria." There are two problems with that theory. First, Emakoji filed a factual resume for his plea, admitting the very facts that he says the district court should not have considered. Second, although Emakoji enumerates his gripes with the court's explanation of the alleged crime, he doesn't explain the legal significance of the court's alleged error. And for good reason. The Bail Reform Act requires courts, in determining the appropriate conditions of release, to "take into account . . . the nature and circumstances of the offense charged . . . ." § 3142(g)(1). We find no error in the court's compliance with that provision.

The order imposing a housing condition of release is AFFIRMED. The appeal of the order regarding in-person rearraignment is DISMISSED for want of jurisdiction.

No. 20-10363

JENNIFER WALKER ELROD, *Circuit Judge*, concurring in part and dissenting in part:

I concur in parts I and II of the majority opinion. However, I respectfully dissent from part III of the majority opinion. I would dismiss Emakoji's challenges to the district court's housing order as unripe. "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). If a claim is not ripe, then we cannot hear that claim. *See id.* To determine whether or not a claim is ripe, we "must balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010).

Emakoji's claims that the housing order violated his Fifth and Eighth Amendment rights are not ripe because they are not yet fit for review. The fitness prong of the ripeness inquiry "focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention." *Id.* (quoting *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993)). "A claim is not ripe for review if 'it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *United States v. Carmichael*, 343 F.3d 756, 761 (5th Cir. 2003) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

We have previously held that challenges to supervised release conditions were unripe where "not only [was] it possible that the supervised release condition appellants complain[ed] of [would] never come to fruition, but it [was] likely" that the conditions would never occur. *Carmichael*, 343 F.3d at 761; *see also United States v. Magana*, 837 F.3d 457, 460 (5th Cir. 2016) (finding a prisoner's claim unripe because it was "based upon speculation that the district court, or the [Bureau of Prisons], will disregard the 'legal

14

obligations placed upon it'" (quoting *Carmichael*, 343 F.3d at 761)).  While the release conditions in both *Carmichael* and *Magana* were expressly contingent upon subsequent events, we have looked to "the record in th[e] case" to determine whether a complained of condition is sufficiently likely to occur.  *United States v. Harris*, 960 F.3d 689, 696 (5th Cir. 2020).

In *United States v. Harris*, we considered four release conditions that were contingent upon the defendant's payment of a monetary assessment during his confinement.  *Id.*  These release conditions were therefore "at least theoretically . . . contingent upon 'future events that may not occur as anticipated.'"  *Id.* (quoting *Carmichael*, 343 F.3d at 761).  Nevertheless, we concluded that, because "it [was] not anticipated that Harris [would] pay the full amount prior to his release from imprisonment" based on the record, Harris's release conditions was ripe.  *Id.*  It was "sufficiently likely that Harris [would] remain obligated to make payments toward his financial obligations when his supervised release begins, and the four conditions of supervised release [would] apply."  *Id.*

And in *United States v. Segura-Resendez*, we considered a release condition that required the defendant to "participate in a program of testing and treatment for alcohol abuse."  515 F. App'x 316, 319 (5th Cir. 2013).  But because the district court had also ordered the defendant to submit to immigration authorities and had recommended that the defendant be deported, "any possibility that [the defendant] will even be in the country and under supervised release is merely hypothetical."  *Id.*  Accordingly, we held that the challenged supervised release condition was not ripe because it was not sufficiently likely to occur given the probability of an intervening action by the government.

Taking into consideration all of the facts of this case, I would hold that Emakoji's challenge to the housing requirement is not ripe as it is not

sufficiently likely that he would ever have to comply with it.  Although the order requiring Emakoji to relocate from Alabama to Texas sounds mandatory on its face, it was unlikely to ever take effect.  The district court gave Emakoji thirty days to find a new residence in the Northern District of Texas.  But the court imposed this new condition only four days before the re-arraignment hearing was scheduled to take place.  As the government has pointed out, "Emakoji was to be subject to presumptive detention under 18 U.S.C. § 3143(a) and review of his conditions of release immediately upon his plea of guilty."  Once Emakoji pleaded guilty, the district court would have been required either to order that he be detained or, if it had found "by clear and convincing evidence that [Emakoji was] not likely to flee or pose a danger to the safety of any other person or the community," release him pending his sentencing.  18 U.S.C. § 3143.

Emakoji has maintained on appeal that he intended to plead guilty at the re-arraignment hearing and that he continues to intend to do so once this appeal is resolved.  Thus, the most likely chain of events would have been that Emakoji attended his re-arraignment hearing, pleaded guilty, and then became subject to either detention or a new set of release conditions.  The new set of release conditions could have contained a new housing requirement, true.  But if the district court had reimposed a housing condition, it would be a *new, separate* condition from the one challenged in this case.  It was unlikely that Emakoji would ever have had to comply with the housing requirement before us now.

Of course, it is possible that the re-arraignment proceeding might not have gone as planned.  Say, for example, that the district court had to postpone the hearing for over a month.  Or perhaps Emakoji might have decided not to plead guilty at the last second, and a new trial date had to be set.  The fact that nebulous possibilities for injury exist does not make a case ripe.  There is always the speculation that harm might occur at some point

down the road.  The question is not whether something *could* have happened to inflict a harm on Emakoji; the question is whether it was likely that Emakoji would have suffered a harm as a result of his release condition.  Here, there is no indication in the record that the re-arraignment hearing and guilty plea would not have proceeded as anticipated by both parties.

Even now, if we were to dismiss his claim as unripe, Emakoji would still have thirty days before needing to comply with the housing condition.  In that time, it is much more likely that he will have entered the guilty plea he intended to enter, that the district court will determine whether or not to detain him, and that he may never need to comply with the housing condition.  His case is "based upon the possibility of a factual situation that may never develop" and is not fit for judicial decision.  *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (quoting *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967)).

That Emakoji may never need to comply with the housing requirement also suggests that we should withhold judicial review in this case.  "The Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being 'force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences.'"  *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734 (1998)).  Because Emakoji will likely never need to comply with the housing order, none of these harms will materialize if we do not provide judicial review at this time.

Moreover, even if I agreed that Emakoji's claim were ripe, I would still have significant concerns about the merits of Emakoji's claim.  In my view, this case is inextricably tied to the COVID-19 pandemic.  After the outbreak

of the virus in the United States, many states imposed severe restrictions that required people to stay home whenever possible and follow social distancing guidelines if they had to go out in public.  Both Alabama and Texas had such orders in place until late April, 2020.

Courts around the country had to adjust in order to timely hear cases. On March 29, 2020, Chief Judge Lynn issued a special order authorizing judges in the Northern District of Texas to use video conferencing or telephone conferencing for many criminal proceedings, including those at issue in this case.  Although that order did not dispel the discretion of district court judges to hold in-person hearings, Chief Judge Lynn *did* specifically find that such hearings "cannot be conducted in person without seriously jeopardizing public health and safety."

Four days later, the district court issued the order challenged in this case, which directed Emakoji both to appear in-person for his hearing and to "obtain housing within the Northern District of Texas within thirty days." The district court's order does not appear to have taken into account the Chief Judge's clear finding that such hearings could not be conducted safely. On top of that, Emakoji was living in Alabama at the time and would have needed to move across several states in a very short time period during a dangerous and increasingly widespread pandemic.  When Emakoji appealed the district court's order, our court stayed his proceedings pending appeal. When the government asked us to reconsider the stay, we denied its motion and left the stay in place.  And when the government moved for our court to dismiss the appeal, we denied that motion as well.

Although the district court may have had authority to impose a housing requirement as a pretrial release condition, whether it should have done so is a difficult question given the circumstances of this case.  Congress has authorized district courts to impose a variety of pretrial release

conditions, including a requirement that a defendant "abide by specified restrictions on personal associations, place of abode, or travel" as part of his pretrial release conditions. 18 U.S.C. § 3142(c)(1)(B)(iv). In addition, the district court "may at any time amend the order to impose additional or different conditions of release." *Id.* § 3142(c)(3). However, the district court may do so only if it determines that release subject to personal recognizance or unsecured appearance bond "will not reasonably assure the appearance of the person as required." *Id.* § 3142(c). Even then, the court must ensure that the defendant is "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required." *Id.* § 3142(c)(1)(B).

As explained above, the housing order would likely never have taken effect at all. It would have been nearly, if not entirely, impossible for Emakoji to move from Alabama to Texas within the four days before his re-arraignment hearing, even under normal circumstances. But during a pandemic and subject to stay-at-home orders, there would have been even more barriers to Emakoji's move.

The district court may have been concerned that Emakoji would not attend hearings subsequent to his re-arraignment hearing. But if that were the case, then the pretrial housing order may not have been the appropriate vehicle for securing Emakoji's presence at those later hearings. As soon as Emakoji had pleaded guilty, the district court would have been required to order either his detention or his conditional release until sentencing. The court could have imposed an identical housing requirement upon him at that point, one that actually was calculated to assure his presence at subsequent hearings. But a pretrial release condition that lasts for only four days (and cannot even be complied with in those four days) does not reasonably assure a defendant's presence at anything.

Moreover, even without the practical difficulties discussed above, the order may not have been necessary under the circumstances. The district court had previously permitted Emakoji to remain in Alabama "provided he agree[d] to appear at all proceedings." The district court drew the conclusion that Emakoji would not attend his re-arraignment hearing based on his two separate motions to continue his proceedings because he and his attorneys were afraid to travel during the COVID-19 pandemic. According to the district court and the majority opinion, these motions indicated a "reluctance" to attend his proceedings.

In my view, however, those motions express only a reluctance to attend *in-person* proceedings while the COVID stay-at-home orders were in place, not a desire to evade his proceedings entirely. Emakoji had not failed to appear at any of his criminal proceedings prior to the re-arraignment hearing. Nor did he say that he *would not* travel to comply with his release conditions. He explained that he was afraid that "traveling between at least three states . . . would risk spreading the pandemic." His motions reveal nothing more than apprehension about the risk that the virus posed not only to him and his family, but to the community at large, if he were required to travel such a distance. At that time, most states, including both Alabama and Texas, were subject to stay-at-home orders. We knew little about the virus, and COVID-19 cases, hospitalizations, and deaths were soaring. Emakoji's fears about the virus were reasonable.

Not only did Emakoji not express reluctance to attend his re-arraignment hearing, he expressly affirmed his willingness to attend the hearing virtually, as authorized by the Chief Judge's order. Even if the court continued to insist on an in-person hearing, Emakoji expressed only apprehension about the danger of travel. There was no reason to suspect that he would not attend without the requirement that he relocate to Texas,

No. 20-10363

especially since that requirement would have had no practical effect in the four days between its imposition and Emakoji's hearing.

For the foregoing reasons, I respectfully dissent from Part III of the majority opinion.